OF THE STATE OF ARKANSAS. 55

TERM, 1854.], Pettit et al. vs. Johnson et al.

## PETTIT ET AL. VS. JOHNSON ET AL.

It is definitely settled that, until a subsisting levy, whether upon real or personal estate, is discharged, it is erroneous to make a second levy; and, if it be made, it may be set aside; but if no objection be made for such irregularity, and a sale take place under the second levy, the title of a bona fide purchaser will not be divested.

The case of *Trapnall vs. Richardson, Waterman & Co.,* (13 *Ark.* 543,) deciding that a levy upon land, within three years from the date of the judgment, will not continue the lien of the judgment, approved; and, a deed of trust executed, subsequent to a judgment, but before a levy within, and a sale after the expiration, of, three years, held good against the purchaser at such sale.

A deed of trust, for the benefit of creditors, conveying to the trustees the legal and equitable estate of the grantor, having been given, no estate remains in the grantor which can be levied upon and sold upon execution at law.

Where a party, having title to land, neither misrepresents nor suppresses any fact connected with his title, but, under a misapprehension of his legal rights, supposes that another has a prior lien to his own, and expresses such opinion, he is not estopped from setting up his title against a purchaser, under the supposed prior lien, having a full knowledge of all the facts.

A vendor's lien will not be enforced against a purchaser without notice.

*Appeal from Chicot Circuit Court in Chancery.*

Hon. JOSIAH GOULD, Circuit Judge.

PIKE & CUMMINS, for the appellants. If the levy on these lands under the execution of Johnson was regular, the lien of the judgment was wholly independent of the levy. As long as the lien lasted, there was no need of a levy, and, by allowing the judgment lien to expire, the lien of Johnson was entirely gone. The lien of the judgment continued only three years from the date of the judgment; and was not continued in force by the levy of the execution. *Trapnall vs. Richardson, Waterman & Co.,* 13 *Ark.* 543.

By the deed to Petit & Ford, no interest was left in Ware, but a mere uncertain, contingent, resulting trust. Petit & Ford became seized in fee-simple, and the lands could no longer be seized on execution against Ware, except where the judgment has a prior lien. So long as the judgment lien lasted, the levy was good. As soon as it was suffered to expire, the levy fell with it, and became a nullity *ab initio*.

The claim of Johnson to a vendor's lien, could not prevail against the deed of trust; because a vendor's lien does not hold against a subsequent sale for a valid consideration; and this deed of trust was no mortgage, but a sale and conveyance to creditors. *Cole vs. Scott*, 2 *Wash*. 141; 2 *Story Eq*. 1225, 1228 *to* 1232; 1 *Bro. C. C.* 302; 15 *Ves*. 336; 6 *J. C. R.* 432.

The deed of trust was made on the 4th May, 1843; after that, Ware had no interest in the land subject to execution, and, consequently, none to which a judgment lien could attach. Nothing, therefore, passed by the sale under execution. It is not a case of estoppel. The purchaser does not allege that he was ignorant of the existence of the deed of trust. It was of record. He is charged with constructive notice, and the silence of Petit neither misled nor injured him. He had other means of information, and therefore the conduct of Petit, or of Ford, did not induce him to do what otherwise he would not have done. Where the purchaser or other actor, was, or ought to have been, acquainted with the subject of his action, or even had the means of knowledge, and neglected to avail himself of them, there is no fraud or estoppel. *Hepburn vs. McDowell*, 17 *S. & R.* 383; *Com. vs. Moltz*, 10 *Barr* 531. The rule is, that to constitute an estoppel, the actor, *having no means of information*, must have been, by the conduct of the other, induced to do what otherwise he would not have done. *Com. vs. Moltz, up sup*. See also, *Casey's Lessee vs. Suldes*, 1 *Gill* 502; *Gray vs. Bartlett*, 20 *Pick*. 186; *Magee vs. Gregg*, 11 *Sm. & Marsh*. 75.

S. H. HEMPSTEAD, for the appellees. J. M. & S. CRAIG, con-

ceding the deed of trust to have been valid and unimpeachable, the first and main question in the case is, whether the *fi. fa.* clause in the *vend. ex.* was a nullity, and the levy under it void; or whether it was merely an irregularity in the process, voidable at the election of the party in a direct proceeding. If voidable, then the levy was good until avoided, and the title of the purchaser is unassailable in this proceeding. (*Willbraham v Snow,* 2 *Saund.* 47, note 2; *Watson on Shff.* 199; 1 *Bos. & Pul.* 359.) But if the *fi. fa.* clause was irregular, the title of the purchaser was not affected, Ware was the only person who could object to the irregularity. *Blaine vs. The Charles Carter,* 4 *Cranch* 328; 10 *Peters* 468; 2 *McLean* 59; 13 *J. R.* 550; *Ib.* 102; *Whiting & Slark vs. Beebe,* 7 *Eng.* 550.

The complainants were present at the sale under the execution of Johnson; and neither of them forbid the sale: one of them proclaimed that the lands were liable to be sold for the satisfaction of that judgment, and bid for the land when offered: and if the complainants can now claim the land, it is a fraud upon Craig, the purchaser. The doctrine is, that a man, having title to an estate, which is offered for sale, and knowing his title, stands by and encourages the sale, or does not forbid it; and thereby another person is induced to purchase, under the belief that the title is good, the former will be bound by the sale, and will not be at liberty to dispute the validity of the purchase. 1 *Story's Eq. sec.* 385, 386, 387; *Wendell vs. Van Rensselaer,* 1 *J. Ch. R.* 354; *Storrs vs. Barker,* 6 *J. C. R.* 166; 7 *Ves. jr.* 235; 13 *Peters* 119; 3 *Rawle* 492; 6 *Barb.* 590.

Mr. Justice WALKER delivered the opinion of the Court.

The material facts, upon which the equity of this case rests, are, that Thomas Ware, who owned several tracts of land and lots in the county of Chicot, in which he then resided, was indebted to a number of persons. Amongst others, he owed Abner Johnson $1,344 36, who, on the 10th of December, 1841, obtained judgment thereon; and to Silas Craig a debt of $2,677, in

8BB

State bonds; to secure the payment of which, he executed to Craig a deed of mortgage on several of the tracts of land so owned, duly acknowledged and recorded on the 24th of March, 1843. And to William H. Sutton, and divers other persons, he was largely indebted; to secure the payment whereof, he, on the 4th of May, 1843, executed to the complainants a deed of trust on said lands and lots of land, including the tracts conveyed to Craig. He was also indebted to Benjamin Bailey, who, on the 9th of November, 1843, obtained judgment for $1,340 00. These several judgments and deeds, by force of the statute, became liens on said real estate, having priority according to their respective dates of record. After several writs of *fi. fa.* and *vend. ex.*, issued upon Johnson's judgment, had been returned unsatisfied, on the 20th of March, 1844, a writ of *vend. ex.* was issued with a *fi. fa.* clause, which was levied on the lands conveyed to the complainants by deed of trust, but no sale was made until May, 1845, at which time they were exposed to sale by virtue of a writ of *vend. ex.* issued 12th of March, 1845, and bought by the defendant, Joshua M. Craig, for the price of $3,031, which he paid, and took from the sheriff a regular deed of conveyance for the same.

Upon this state of case, the complainants filed their bill; the prayer of which was, that the sheriff's sale and deed, if any, might be cancelled, and the lien of the deed of trust to them confirmed and enforced; and the land sold, first, to pay Silas Craig's mortgage debt, and the residue to complainants. Johnson, Bailey, Ware, and the Craigs, are made defendants.

Johnson, in his answer, insists, first, upon his lien and the validity of the sale under it; and, second, that if there were irregularities, such as might have been fatal to his prior lien rights, if asserted, that the complainants declined taking advantage of them, and by their presence and conduct acquiesced in the sale of the land.

Joshua M. Craig relies upon the same defence, and claims, as a *bona fide* purchaser, who was encouraged to bid and pay his

money by the acts and declarations of the complainants. He sub-sequently filed a cross bill, but from the view which we take of the case, it will be unnecessary to notice it; because, unless the sale under Johnson's judgment lien can be upheld, the rights of the purchaser must necessarily fall.

It has been repeatedly decided, by this Court, and may now be considered as definitely settled, that until a subsisting levy, whether upon lands or personal property, is discharged, it is erroneous to make a second or further levy; and that, upon application for that purpose, such process and levy may be set aside; but it has also been decided that if no objection is made to such irregularity, and a sale is made under such erroneous process, that a *bona fide* purchaser, who pays for the property and gets his deed, will not be divested of his title thus acquired, on account of such erroneous proceeding.

But the main ground of objection to the validity of the sale under Johnson's judgment lien is, that notwithstanding his was the prior lien, and that the levy was made before his lien expired by limitation, he lost the benefit of such lien, because the sale was postponed until after the three years had elapsed, the period fixed by law for its termination. This precise point came up for consideration in the case of *Trapnall vs. Richardson, Waterman & Co.*, 13 *Ark.* 543, and it was there held, that a levy upon lands within three years from the date of the judgment, will not continue the lien of the judgment beyond the three years. Adhering to this opinion, it follows, that the purchaser acquired no right whatever under the judgment lien, but took only such interest or estate as existed in the defendant at the time of the sale.

We will, therefore, proceed to enquire what that estate was. We have seen that the judgment lien had expired by limitation, before the sale, and that although the levy was made before the expiration of the three years, its effect was not to continue the judgment lien, but to create a new lien from the date of the levy, and we have also seen that before the levy was made, and consequently before the lien attached, the land so levied upon had been

conveyed by deed to the complainants; the effect of which was, to vest in them the legal estate in the lands, charged, it is true, with a specific trust,—the payment of Ware's creditors,— and it is also true that if, upon the sale of the property, there should be found to be more than sufficient money for that purpose, the residue of the property remaining undisposed of should be reconveyed to Ware; or if, upon the sale of the whole estate, there should be found a balance in cash, after the payment of the entire trust, such sum should be paid to Ware. Upon this contingency, and to this extent, he may be said to have an equitable interest in the lands conveyed, and although in some respects this interest is much like that of a mortgager's equity of redemption, it certainly differs in this, that the equity of redemption, as well as the legal estate, is conveyed by deed, or if reserved, is dependant upon a contingency, which never happens until after the trust sale. And it is for this reason, that a sale by a trustee vests in the purchaser an absolute estate in the lands purchased, free from all equity of redemption. The legal title and the equity must be conveyed, or he could never convey such title to the purchaser, because no one can convey a more perfect title than he possesses. This view of the legal effect of a deed of trust, is fully sustained by a former decision of this Court. (*Crittenden vs. Johnson*, 11 *Ark. Rep.*) And in *Morris vs. Way*, 16 *Ohio Rep.* 469, the precise question before us was presented, and it was held that a deed of trust passes the legal title, and though given to secure a debt, and so drawn as for most purposes to be treated as a mortgage, yet, as between the grantor and the grantee, the estate passes, so that nothing remains in the grantor, which can be levied upon and sold upon execution at law.

An equitable interest in an estate was not, at common law, subject to sale under common law process; and our statute which subjects equitable estates to sale, although general in its terms, when properly considered, could never have been intended to embrace such equities as those in this case reserved in the grantor. No one acquainted with the condition of the land titles in this

State, at the time the act passed subjecting equitable estates to sale, doubts but that the main object in view was to subject to sale such equitable interests or estates as were acquired by entry and purchase from the United States. For, it is a matter of public history, common to all newly settled countries, in the United States, that a large amount, perhaps half the lands in the State then purchased, were held by such equitable titles, and although paid for and unencumbered, remained unpatented, for a greater or less time dependent upon the press of business in the land office department. The effect of this was to greatly embarrass and delay the collection of debts; to remedy which, was the leading object of the passage of the act, and so we find the expressions, "all real estate, whether patented or not, whereof the defendant was seized in law or equity, shall be liable to be levied upon and sold," &c., showing that the Legislature had directly in view unpatented lands. Without therefore restricting the act to such equitable estates as are held by certificate of purchase from the United States before the patent issues, or drawing a line of distinction between such equitable interests as are or are not within the spirit and meaning of the act, it will suffice for the present to consider whether equities of this and like kind are, under the statute, subject to be levied upon and sold under execution. And that they are not, is evident, as well from the fair construction of the act, under the circumstances under which it was passed, as from the consequences likely to result from such sales, because a sale of an interest so uncertain, as well to the nature and extent of the interest, as the time when the purchaser could take the benefit of his purchare, would, in most instances, be attended with great lost to the debtor, and of very little benefit to the creditor, which are the prominent considerations to be considered and guarded against in judicial sales. We must presume that the Legislature did not lose sight of this. They must have known that no one would be inclined to bid the value of interests so doubtful, and to enjoy which the purchaser would

have to resort to a court of equity to ascertain his true interest and affirm his title.

In all such cases, where the debtor is possessed of an equitable estate, in which there are conflicting interests, upon the determination of which the debtor's real interest must depend, and the creditor seeks to subject it to the payment of his debt, his best and in most cases his only remedy is in chancery, where all the parties interested can be heard, and the real interest of the debtor ascertained, and where a sale may be had under process so guarded as to protect the interest of the debtor and give assurance to the purchaser of an unencumbered title.

The second ground of defence is, that the complainants, by their acts and declarations, encouraged the purchaser to bid for the property, and are for that reason estopped from questioning the validity of his title. There can be no doubt, from the evidence, but that the complainants, as well as the purchaser and others present, believed that Johnson, by virtue of his judgment lien, had a prior right to satisfaction, and acted under this belief; but there is not a particle of evidence to prove that the complainants either misrepresented or suppressed any fact connected with their own title, or that of Johnson. On the contrary, they made their title known, as well by the records of the country, as by declarations at the time, and insisted upon their rights under it; not as a title superior to Johnson's, for under a misapprehension of their legal rights, they supposed Johnson's superior to theirs, but as a title which they would assert fully. There is, therefore, not the slightest ground for charging fraud upon the complainants. The defendant, Craig, has no cause of complaint against the complainants. He was not deceived with regard to the facts, for they were well known to him, and as to his mistake in the legal rights of the parties, he must abide the consequences.

So far as regards the title set up under Johnson, as holding a vendor's lien, for the purchase money, it may suffice to say that, waiving all consideration of the merits of the defence in other re-

spects, it cannot prevail for want of notice to the complainants before the sale to them.

The determination of these several grounds of defence, in effect, disposes of the whole case, because if Ware had no such estate in the lands, legal or equitable, as was subject to sale under execution, Craig, the purchaser, acquired no title whatever to the property sold; and the same remains now subject to be sold in satisfaction of the trust debts, as fully as if no such sale had been made.

Part of the money paid by Craig to the sheriff, has passed into the hands of Johnson, and beyond the control of the Court in this case, as there is no issue between Johnson and Craig in regard to the sum so paid. The residue of the money is in the hands of the receiver, and as Craig has lost the benefit of his purchase, it is but just that this sum should be restored to him.

The defendant Bailey has not contested the complainant's title to the property, and was most probably only made a party, because his execution against Ware was also levied upon the lands in controversy. Under these circumstances no decree, should be taken against him.

The cross-bill of Joshua M. Craig depended for its support upon the validity of the sheriff's sale to him; that question. having been settled, the bill must be dismissed at complainant's costs.

Having thus disposed of the several questions presented for our consideration, it only remains for us to direct that the decree of the Chicot Circuit Court be reversed, and that the appellee, Joshua M. Craig, pay the costs in this Court, and that the cause be remanded to said Circuit Court, that a decree may be there entered, declaring the sale, made by the sheriff to Joshua M. Craig, void, and that the same be set aside, and the deed to Craig canceled. That the cross-bill be dismissed, at the complainant Craig's cost; that the title of the trustees to the property in controversy be affirmed, and the lands sold at such time, and upon such terms as may appear to the chancellor equitable; and that the proceeds of the sale be applied, first, to the payment of all

costs not otherwise directed to be paid; second, to the payment of the mortgage debt, due to Silas Craig; third, to the debts set forth in the deed of trust, in the order therein directed; and, lastly, the residue, if any, to the defendant Ware.

Hon. Chief Justice Watkins not sitting.