**172** CASES IN THE SUPREME COURT

Cornish vs. Dews et al. as admr. [JULY]

CORNISH VS. DEWS ET AL. AS ADMR.

If a deed of trust for the benefit of creditors was valid when executed, no subsequent conduct on the part of the grantor, or the trustee, however fraudulent, could avoid the deed, and deprive the creditors accepting it in good faith, and not participating in the fraud, of their rights under it (*Hempstead vs. Johnston, ante.*)

And even if a debtor making a deed of trust, had the purpose, at the time he made the deed, of hindering and delaying creditors, not provided for by it, yet it will be valid as to the preferred creditors, if they were not parties or privies to his fraudulent purpose, but accepted the deed in good faith, to secure debts really due them.

Where a bill is filed by a trustee to injoin the sale under execution of property included in the trust deed, on the ground, not merely that it was included in the trust deed, but that it was required by the trustee to pay the trust debts, and the proof shows that there was but a balance of the trust debts remaining unpaid, that there was an abundance of other property included in the trust deed, which had been sold by the trustee, to pay such balance, the Court should dismiss the bill for want of equity.

Where by the terms of a deed of trust it is to become void, and the property to revert to the grantor on the payment of all the trust debts, the deed becomes inoperative *eo instanti* all the debts are paid. And so, on the payment of a part of the trust debts, the property is discharged from the incumbrance *pro tanto*.

Where there is more property included in a trust deed than is sufficient to satisfy all the debts secured by it, a pursuing creditor may file a bill against all the parties interested to have the trust closed and the property subjected first to the payment of the trust debts, and the excess to the satisfaction of the complainant's debts.

The rule in equity is that the testimony introduced by the parties must be relevant to the issues: but where the answer to a bill by the trustee to injoin a judicial sale of the trust property, alleges that the trust deed was made to hinder and delay creditors, testimony of the subsequent acts of the trustee and grantor conducing to sustain such allegation, is not irrelevant.

*Appeal from the Circuit Court of Union county in Chancery.*

The Hon. SHELTON WATSON, Circuit Judge.

CARLETON, for the appellant.

The Court should have sustained the motion to strike out that part of the testimony objected to, as it was irrelevant, for no

proof can be admitted of any matter not noticed in the pleadings. *Daniell's Ch. Pr.*. 814, 815, 992.

As fraud is never presumed, the facts and circumstances constituting the fraud must be stated with distinctness and precision. *Conway vs. Ellison,* 14 *Ark.* 363; *Alden vs. Lincoln,* 13 *Metc. Rep.* 204,

That a debtor may prefer one creditor, or set of creditors to another. *Twyne's Case,* 3 *Coke* 80; *Eastwick vs. Carlland,* 5 *Term* 420. And a deed preferring creditors is not fraudulent because made in the absence and without the knowledge of the beneficiaries. 2 *Kent* 533; *Marbury vs. Brooks,* 7 *Wheat.* 526; *Brooks vs. Marbury id.* 78; *Bransheer vs. West,* 7 *Peters U. S. Rep.* 608; *Ellison vs Ellison,* 6 *Ves.* 656; *Small vs. Oudley,* 2 *P. Wms.* 427. The assent of absent creditors will be presumed, if the assignment be beneficial to them. 2 *Kent* 533; *North vs. Turner,* 9 *Serg. & R.* 224; *DeForest vs. Bacon,* 2 *Conn. Rep.* 633; *Galt vs. Debrel,* 10 *Yerg.* 146; *Nicol vs. Munford,* 4 *J. C. R.* 529.

Such deed is not fraudulent because all the grantor's property is included in the deed. *Nunn vs. Willsmore* 8 *Tenn.* 521; *Wilkes & Fontain vs. Ferris* 5 *J. R.* 335; nor because any effects undisposed of are, by the terms of the deed, to be reconveyed to the grantor. 2 *Kent* 536 *note a.* (5 *Ed.*;) 5 *J. R.* 335; nor because the deed provides that the grantor shall remain in possession until the day of payment. *Hopkins vs. Scott,* 20 *Ala. Rep. N. S.* 184; *Magee vs. Carpenter,* 4 *Ala.* 474; *Ravesair vs. Alston,* 5 *Ala.* 279; 8 *ib.* 694; 7 *id.* 235, 356; 11 *Metc.* 333; 13 *id.* 204; nor because the grantor subsequently sold a portion of the property. *Alden vs. Lincoln,* 13 *Metc. Rep.* 204.

A deed of trust is valid, though it may hinder and delay the creditors not preferred, if it was executed in good faith, and with no intention of fraud. *Hendrick vs. Robinson,* 2 *J. C. R.* 308: *Mean et al. vs. Howell & Atler,* 4 *East* 1; 3 *J. R.* 84; 5 *id.* 344; *id.* 412, 456; 2 *J. C. R.* 308.

The deed being valid in its inception could not be rendered fraudulent by the subsequent acts of the grantor or the trustee. *Alden vs. Lincoln,* 13 *Metcf.* 204; *Brooks vs. Marbury,* 11 *Wheat.* 89.

The deed being valid the grantor had no interest in the slaves subject to levy and sale under execution—his interest being only the equity of redemption. *Scott vs. Scholy,* 8 *East Rep.* 467; *Wilkes & Fontaine vs. Ferris,* 5 *J. R.* 335; *Hawkins vs. May,* 12 *Ala.* 673; *Hopkins vs. Scott* 20 *Ala.* 179.

LYON, for the appellees.

The issue being that the trust deed was made and contrived to hinder and delay creditors, any facts tending to show the object and intent of the grantor in making the trust—the manner of the sale of the trust property, and the conduct of the grantor and trustee in relation to it—were admissible in evidence. *Underhill vs. Van Cortlandt* 2 *J. C. R.* 339. *Dan. Ch. Pr.* 995.

If the trust deed under which complainant claims, was made or contrived with the intent to hinder or delay creditors, then it is void against the defendants. *Rev. Stat.* 541. *sec.* 4.

That the pleadings and evidence show conclusively that the grantor in the trust deed did make and execute it with an intent to hinder and delay his creditors—that he assigned all of his property subject to execution, in trust to his son, with a reservation for the benefit of himself and family; that the trust was only for the benefit of a part of his creditors, and the property conveyed was worth double the amount of the debts the trust was made to secure; that the trustee was his son, and like the grantor and his family, wholly dependent on the trust property for a support; that the grantor was not in failing circumstances; that the grantor was permitted to sell and convey the trust property in violation of the terms of the trust, and the trustee took no steps to prevent it—all these acts are badges of fraud; and the property levied upon was subject to the execution of defendants. See *Kent Com. 3d Ed.* 2 *Vol.* 534, 536 *and note; Groose vs. Wakeman,* 11 *Wend. Rep.* 187, *and authorities there cited; Bailey & Green vs. Burton et al.,* 8 *Wend. Rep.* 339; *Baldwin vs. Cawthorne,* 19 *Ves. p.* 168.

Mr. Chief Justice EngⱢish delivered the opinion of the Court.

This was a bill for injunction, filed in the Union Circuit Court, on the 12th of April, 1852, by John L. Cornish against Hezekiah Dews and Rowland B. Smith, as administrators of Hiram Smith, deceased.

The bill alleges that on the 30th of Sept., 1850, John H. Cornish of Union county, being in failing circumstances, executed to complainant, as trustee, a deed of trust on the property therein described, for the purpose of securing the debts therein mentioned, which deed was duly acknowledged and recorded, on the day of its execution, in the Recorder's office of said county, where the complainant and the grantor resided, and the property was situated. The bill recites the provisions of the deed, and makes an exhibit of it.

The debts of the grantor intended to be secured, according to the allegations of the bill, and the recitals of the deed, were as follows:

To Parsons & Co. of Boston, by open account for merchandize, $774 35, due March 1st, 1850.

To Montross & Stilwell, of New Orleans, about $1,800, secured by three notes; the first for $1,742 85, due 15th January, 1848; the second for $1,047 58, due 1st April, 1849; and the third for $272 25, dated 21st May, 1849, and due at six months; which notes were entitled to a credit for payments made at sundry times of about $1,400.

To Wills, Peas & Co., of New Orleans, $2,125 51, by note due 1st March, 1851.

To Taylor & Rayne about $300, by two notes, the first for $522 62, due 25th March, 1849, and the second for $417 06, due 1st January, 1848; which notes should be credited, for payments made at sundry times, with about $650.

To Smith & Brother about $100, on note for $257 62, due 1st of April, 1849, with sundry credits, etc.

That for the purpose of securing, and enabling the complainant, as trustee, to pay the above debts of the grantor, the deed conveyed to him several tracts of land, sixteen slaves, among which was *Peter*, a number of horses, mules, cattle and other

chattels, all of which are described in the deed.

The property was conveyed in trust that the trustee should, as soon as convenient, after the expiration of fifteen months from the date of the deed, if the debts, or any, or either of them remained unpaid, and on request of any or all of the creditors, make public sale of the property, or so much thereof as might be necessary to satisfy so much of the debts, as remained unpaid, etc., etc., etc. That the grantor should remain in possession and use of the property until it became necessary for the trustee to take it into his possession, for the purposes of the trust, or to protect it from waste, etc.

The bill further alleges that after the execution and registration of the deed, and on the 16th of April, 1851, the defendants Dews and Smith, as administrators, etc., obtained a judgment in the Union Circuit Court against John H. Cornish, the grantor in the deed, and one John H. Hines, for $454 28 debt, and for costs. That on the second of June following they caused execution to issue thereon to the Sheriff of Union county, who levied on the slave *Peter* embraced in the deed. That John H. Cornish (who, by the terms of the deed, was permitted to retain possession of the slave) executed a bond for the delivery of the negro to the Sheriff on the return day of the *fi. fa.*, which was forfeited. That, afterwards, on the 30th Oct., 1851, the defendants, Dews and Smith, caused a *fi. fa.* to be issued on the delivery bond judgment, which the Sheriff again levied on *Peter*, and advertised him for sale, and would sell him unless restrained.

That, defendants were well notified of the existence of the deed of trust, but were contriving to distress complainant by putting it out of his power to execute the trust, and exposing him to the suit of the *cestui que trusts*, for the non-execution thereof, thereby defeating the design of the trust, to the manifest wrong and injury of the beneficiaries, who had accepted and claimed the benefit of the trust deed.

That complainant believed that if Peter was sold by the Sheriff, no responsible resident would purchase the *equity of redemption* in him; or that if any one should, the title was so clouded he would give nothing for it, and the right of redemp-

tion would be lost to John H. Cornish or his heirs. That, in all probability, the slave would be purchased by some reckless person, who, either in ignorance or disregard of the trust, would run *Peter* beyond the jurisdiction of the Court, and the limits of the State, and before complainant was aware of it, sell him to some innocent purchaser, and thereby defeat the trust.

That the circumstances of John H. Cornish, and the claims of the beneficiaries in the deed, who were *threatening to sue* complainant if he did not so proceed, made it necessary for him to take possession of the trust property, by virtue of the deed, and proceed to execute the trust, which he could not do, unless assisted by the Court to get possession of *Peter*.

Prayer for injunction restraining defendants and the Sheriff from selling Peter, and that he be surrendered up to complainant, and for general relief.

A temporary injunction was granted on the filing of the bill.

The defendants answered, in substance as follows:

They admit the execution and registration of the deed of trust as alleged.

They do not know that Cornish, the grantor, was in failing circumstances at the time he made the deed, but believe he had sufficient property to pay all his debts, etc.

They deny that the object of creating the trust was the payment of the debts named in it, but charge that Cornish executed the deed upon all his property for the purpose of hindering and delaying creditors, amongst whom were respondents, and of obtaining time.

They admit that the debts named in the deed were debts due from, and owed by Cornish at the time he made the deed, but they were informed and believed that he had paid off and satisfied nearly all of them since the execution of the deed. That complainant knew, at the time he filed the bill, that nearly all of said debts were satisfied. That the debts of Parsons & Co., and Montross & Stilwell had been paid. That a large amount of the debts of Wills, Peas & Co., had been paid. That the debts of Taylor & Rayne, and Smith & Brothers, had also been paid. That all of the said payments were made by Cornish,

**178**   CASES IN THE SUPREME COURT

Cornish vs. Dews et al. as admr.                [JULY

since the execution of the deed, which was known to complainant when he filed the bill.

That Cornish, a short time before the bill was filed, did, with the knowledge and consent of complainant, sell to one Epps R. Brown, *Amy*, a woman, and *Betsy*, a girl, two of the slaves embraced in the deed, for a sum more than sufficient to pay the balance due on the trust debts.

They admit that they had taken the steps stated in the bill to subject the slave *Peter* to the satisfaction of their judgment against John H. Cornish, etc. But aver that complainant is his son, was a mere youth when the deed of trust was executed, lived, and still lives with and under the control of his father; is poor and dependant upon him for support, and is using the trust property for the maintenance of himself, and the other members of his father's family. That complainant is irresponsible for any and all of his acts as such trustee, and the deed of trust was used as a blind to screen the property embraced in it, from respondents' execution, and other judgment creditors of John H. Cornish.

That the first levy on Peter, referred to in the bill, was made with the knowledge and assent of complainant, and he became the security of his father in the bond for the delivery of the slave: and after the bond was forfeited, and the negro again levied on, complainant for the first time objected, and interposed his claim as trustee, by filing the bill, which was done, as respondents believe, at the instance and request of the father of complainant, for the purpose of hindering and delaying respondents in the collection of their debt.

They admit constructive notice that Peter was included in the deed: but deny that they caused him to be levied on for the purpose of harrassing complainant, or subjecting him to suit, etc., as alleged in the bill: and aver that the first levy was made upon Peter by direction of John H. Cornish, and with the knowledge and assent of complainant, in order to protect other property belonging to said John H., which was subject to the execution, and not included in the deed.

Respondents were informed, and believed that none of the

OF THE STATE OF ARKANSAS. **179**

Term, 1856.]                    Cornish vs. Dews et al. as admr.

creditors named in the deed of trust, except Wills, Peas & Co., had ever accepted the trust, as an indemnity for their debt, etc.

That there was no danger of Peter being sacrificed under an execution sale, for respondents would have bid for him the full amount of their debt and costs.

That there was no necessity for the complainant to file the bill to protect himself, or the rights of the *cestui que trusts*. That the time allowed by the deed for the payment of the debts had expired; that the creditors had made no request of the trustee to proceed to sell the property, or if they had, he had not done so; that the debts were long due; nearly all of them had been paid, and but a small amount remained unpaid, etc.

They aver that the deed was made to hinder and delay creditors, and plead this in bar of the relief sought by the bill. They also claim the benefit of a demurrer, for want of equity, upon the hearing, etc.

The answer was filed 18th October, 1852.

The cause was heard, at June term, 1854, on bill and exhibits, answer, replication and depositions; and the Court being of opinion that the deed of trust was made to hinder and delay creditors, and was void, as well also as all acts done under and by virtue of it, and that the property embraced therein was subject to levy and sale, as the property of John H. Cornish, to satisfy the judgment of defendants, decreed that the injunction be dissolved, that the deed of trust be set aside and held for naught, and that defendants be restored to all their legal rights and remedies at law on their delivery bond judgment, and have execution thereon, etc., and that the property embraced in the trust deed be subject thereto, etc., and that complainant pay the costs of the bill, etc.

The complainant appealed from the decree to this Court.

There are two grounds of defence relied upon in the answer:

1. That the deed of trust was made to hinder and delay creditors, and was, therefore, void under the Statute of frauds. *Digest, ch.* 73, *sec.* 4, 5.

2. That if the deed was valid when made, the debts secured by it had nearly all been paid when the bill was filed, and

there was property amply sufficient embraced in the deed, besides the boy *Peter*, to pay any balance that remained unpaid, and that, therefore, there was no just ground for the Chancellor to interpose in behalf of the trust, and protect *Peter* from being subjected to the satisfaction of the judgment of the appellees.

1. The appellees failed to produce any express proof that the deed was made to defraud creditors, but they insist that from surrounding circumstances in proof, it is to be inferred that the deed was a fraudulent contrivance.

The answer makes the important admission that the debts recited in the deed were genuine, and justly due from John H. Cornish to the *cestui que trusts* when the deed was executed.

*John H. Cornish*, whose deposition was taken by the appellees, states that he executed the deed in good faith, for the purpose of securing the debts recited in it, and not for the purpose of hindering or delaying the appellees, or any other creditors, in the collection of their claims. That, at the time he made the deed, he felt doubtful of his solvency. He owed as much as $13,000; and, besides the property embraced in the trust, had not more than $5,000, in available notes and accounts. That, by the trust deed, transferring notes, etc., etc., he made provision for the payment of all the principal debts which he owed personally. That the debt of appellees was contracted by himself and Hines, as partners in a steam mill, and his reason for not including this debt in the deed of trust, or making other provision for its payment was, that he believed that the partnership property would pay all liabilities contracted on its account, and yield a handsome profit beside; and that he did not suppose that he should become individually liable for any of the firm debts, etc. That he informed the *cestui que trusts* of the execution of the deed, and they accepted and claimed the benefit of its provisions before the appellees had taken any steps to subject *Peter* to the satisfaction of their claim.

These statements conduce to sustain the fairness of the deed, and furnish grounds to uphold its validity for the benefit of

such of the *cestui que trusts* as may not have been paid their claims after its execution.

There are other facts in proof which tend to show that John H. Cornish used the deed to protect the property for his own purposes, other than the payment of the debts secured by it.

He states that it was essentially necessary that he should have the use of the property embraced in the deed for the support of his family. The trustee was his son, lived with him, and was about 21 years of age, when the deed was made. Sometime after the execution of the deed, he sold *Betty* and *Amy*, two of the slaves, and some chattels, included in the deed, and appropriated the money to other purposes than the payment of the trust debts. Afterwards, and while this suit was pending, in 1853, the trustee made a sale, under the trust deed, of all the other property including *Peter*, and it was purchased by Wm. Cornish, a brother of John H., who claimed to have a mortgage on it. The trustee did not stop selling when he had sold enough of the property to pay the balance due on the trust debts, as provided by the terms of the deed, but sold the whole of the property. The negroes were put up in three lots by the direction of John H. Cornish, and against the objection of the attorney of one of the creditors, etc. The purchaser paid over to the trustee so much of the purchase money as it was supposed would be required to discharge the balance due on the trust debts, and retained the remainder in his own hands, etc.

But, as held in the case of *Hempstead vs. Johnston*, present term, if the deed was valid when executed, no subsequent conduct on the part of the grantor, or the trustee, however fraudulent, could avoid the deed, and deprive the creditors, accepting it in good faith and not participating in the fraud, of their rights under it. And even if Cornish had the purpose, when he made the deed, of hindering and delaying creditors, not provided for by it, yet if the preferred creditors were not parties or privies to his fraudulent purpose, but accepted the deed in good faith, to secure the debts really due them, it would be valid as to them.

Upon all the facts of this case, as they appear before us, we are not prepared to say that the appellees sustained, with sufficient clearness to warrant a decree in their favor, the affirmative allegation of their answer, that the deed was void *ab initio* under the Statute of frauds.

2. The second ground of defence, made, substantially, by the answer of the appellees, that there was sufficient property included in the deed to pay the balance due on the trust debts beside the boy *Peter*, was clearly established by the testimony.

John H. Cornish states that the balance due upon the trust debts at the time of the sale of the trust property by the trustee, was $3,942 94, from which was to be deducted the amount of a collateral security, turned over by him to Montross and Stillwell, if it had been paid. The testimony of Lyon shows that this collateral security, amounting to $1,339 94, was paid; leaving the balance due upon the trust debts $2,603 39.

John H. Cornish states that he sold *Betty* and *Amy* for $1,250, and some other property embraced in the deed for $85, making $1,335. This property, of course, was subject to the trust. The trustee sold the remainder of the property at the trust sale, including *Peter* for $4,071. Taking these sales as a criterion of its value, the entire trust property was worth $5,406. Wm. Cornish, who purchased the property at the trust sale, values *Peter* at $700. Deduct his value from the value of the whole property and it leaves $4,706 to discharge $2,603 39, the balance due on the trust debts, leaving an excess of $2,102 63.

But Wm. Cornish estimates the cash value of the property sold at the trust sale at $6,960 in the aggregate; deduct $700 for *Peter*, and add $1,335, the value of the property sold by John H. Cornish, and $7,595, is the result. From this sum take the balance due on the trust debts, and the remainder is $4,991 61.

The bill sought the interposition of the Chancellor to prevent the sale of *Peter* under the appellees' execution, not merely upon the naked ground that he was included in the trust deed, but upon the ground that he was required by the trustee for the purposes of the trust to discharge the trust debts. The

proof shows that this was not true; that there was an abundance of property included in the trust deed, without *Peter*, to satisfy the balance due upon the debts. Under this state of case what decree should the Chancellor have rendered? Should he have made the injunction against the sale of *Peter* perpetual, or dismissed the bill for want of equity?

In *the State use, etc. vs. Lawson*, 1 *Eng. R.* 269, this Court held that the equity of redemption of the grantor in a deed of trust upon land, was the subject of execution.

In *Crittenden vs. Johnson*, 6 *Eng. R.* 103, the doctrine of this case was held not to be good law. MR. JUSTICE SCOTT said: "It obliterates the well defined lines between deeds in trust and mortgages—breaks down their partition walls."

In *Pettit et al. vs. Johnson et al.*, 15 *Ark.* 55, it was expressly decided that the grantor in a deed of trust to secure the payment of debts, had no such interest in the property (while the deed was in full force) as was the subject of execution at law. That the whole title to the property was in the trustee.

Is the doctrine of that case applicable to the one now before us? In that, it seems that the deed was in full force as a security for all the debts embraced in it. In this, nearly half of the amount of the debts secured by the deed had been paid after its execution. By the terms of the deed it was to be void, and the property to revert to the grantor on the payment of all the trust debts. If all the debts had been paid, the deed, *eo instanti*, by operation of law, would have become inoperative, and the property would have reverted to the grantor, without a reconveyance by the trustee. On the payment of part of the debts, the property was discharged from the incumbrance *pro tanto;* and there being more property included in the deed than was required to satisfy the remaining debts, how was a creditor not provided for by the deed, to proceed in order to subject the excess of property to the payment of his debt?

No doubt but the proper course for the judgment creditor to pursue in such case, would be to file a bill against the grantor, trustee, and *cestui que trusts*, praying an account of the balance due upon the trust debts, and a decree that the trust be closed,

184     CASES IN THE SUPREME COURT

Cornish vs. Dews et al. as admr.     [JULY

and the property subjected first to the discharge of such balance, and the excess to the satisfaction of the complainant's debt. *Pettit et al. vs. Johnson et al. ubi sup.*

Had the appellees in this case, made their answer a cross-bill, and brought in the proper parties, the same result might have been attained.

But the question reverts, what decree should the Chancellor have rendered in this case, upon the facts before him? Should the bill have been dismissed for want of equity, or the injunction been made perpetual? We have seen that the complainant failed to sustain the allegation that *Peter* was required for the purposes of the trust. Moreover, while he held off the execution of the appellees by means of the temporary injunction, and while the bill was pending, he proceeded to sell the whole of the trust property, (except what his father had before sold) including *Peter*, regardless of the provision of the deed, which authorized him to sell only so much of the property as was necessary to pay the debts and expenses of the trust. And his father, whose interest the bill seeks also to protect, was present, sanctioning and directing the mode of sale. No proof was made that the *cestui que trusts* had given the trustees any direction to file the bill, or to sell the property under the provisions of the trust.

Under all the facts of the case we think the Chancellor might well have dismissed the bill for want of equity; and such should have been the form of the decree. So much of the decree as declared the deed null and void, *ab initio*, as we have above intimated, was not warranted by the proof. So much of the decree as declared all acts done under the deed to be null and void, and that the property be subject to the satisfaction of appellees' judgment by execution at law was not warranted by the pleadings. This was in effect to declare the trust sale void, which occurred after the filing of both bill and answer, and its validity was not directly put in issue by cross-bill or otherwise. The bill being dismissed for want of equity the appellees would have been left to pursue such legal or equitable remedies for the satisfaction of their judgment as they may

OF THE STATE OF ARKANSAS. 185

TERM, 1856.]                Cornish vs. Dews et al. as admr.

have been entitled to in the premises. *Conway vs. Ellis*, 14 *Ark.* 363.

The appellant insists that the Court below should have excluded, on his motion, all the testimony in reference to the trust sale, as being irrelevant to the issues made by the pleadings.

It is doubtless the rule in equity, as well as at law, that the testimony introduced by the parties must be relevant and pertinent to the issues formed by the pleadings.

It is also true, as we have seen, that the validity of the trust sale was not put directly in issue by the pleadings.

But it was alleged by the answer that the trust deed was a contrivance to hinder and delay creditors, and though the conduct of the grantor and trustee subsequent to the execution of the deed in relation to the property, however fraudulent, could not, as we have seen, avoid the deed, if valid in its execution, yet, proof of such conduct might conduce to throw light upon the original design of the grantor in making the deed.

The value of the trust property was also in issue; and the price which it brought at the trust sale might afford some criterion of its true value.

It was also alleged in the answer, that a large portion of the debts had been paid; that the deed was used by the grantor and trustee as a blind to screen the property from the execution of appellees; and that the bill was filed not really for the purpose of protecting the interest of the *cestui que trusts*, but for the benefit of the grantor in the deed, etc. The testimony objected to was not irrelevant to such allegations.

The decree, in the form in which it was rendered in the Court below, must be reversed, and the cause remanded with instructions to dismiss the bill for want of equity.

Absent, Mr. Justice SCOTT.