## MANDEL ET AL. VS. PEAY ET AL.

Where the validity of the claim of a preferred creditor, in a deed of trust, is not put in issue in a proceeding in equity in relation to the trust, it is not necessary that he produce other evidence of the genuineness of his claim than the recital in the trust deed; but if the Chancellor has cause to suspect the validity of a claim, so provided for, or if it be questioned by any of the beneficiaries in the trust deed, he may cause enquiries to be made before the Master, for the purpose of ascertaining whether such demand be genuine or not, before distributing the fund.

Where the trustees in a trust deed are wasting the trust fund, the Chancellor may rule them to security, or remove them, and appoint a receiver, etc.

Where one partner, with the consent of his co-partner, executes a deed of assignment of the partnership effects, for the payment of his individual debts, after paying to the co-partner, out of the proceeds of the partnership property, a sum equal to such partner's interest therein, it will not be treated as a fraud upon creditors, nor as a reservation of a portion of the partnership property for the benefit of the co-partner as against his own creditors.

### *Appeal from Pulaski Chancery Court.*

Hon. HULBERT F. FAIRCHILD, Chancellor.

FOWLER & STILLWELL, and JOHNSON, for appellants.

WATKINS & GALLAGHER, and BERTRAND, for the appellees.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

*John A. Nelson,* a merchant of Little Rock, being in failing circumstances, made a deed of trust to L. L. Mandel and C. S. Ingram, as trustees, for the benefit of a large number of his creditors of New York, Philadelphia and New Orleans. The deed conveys to the trustees certain lands, city lots, and slaves, the property of the grantor; and then proceeds as follows:

" and also with the consent of *L. L. Mandel*, now present, and subscribing the same, all the stock of merchandize in said city of Little Rock, belonging to *John A. Nelson & Co.*, or firm composed of John A. Nelson and L. L. Mandel (which said firm is now dissolved), also the bonds, notes, accounts, or other evidences of debt to the said John A. Nelson, or the said John A. Nelson & Co. belonging, due, or to become due; to secure the payment of the following debts, to-wit: 1st. To L. L. Mandel the sum of six thousand and sixty-three 52-100 dollars, with 8 per cent. interest from the 1st day of March, 1855, it being the value of said Mandel's interest in said merchandize and partnership assets of John A. Nelson & Co.; 2d. To Hide & Co., $807 82," etc., etc., [*then follow the names of the creditors of Nelson, with the sum due to each*]; " also any other creditors residing in New Orleans, Philadelphia, or New York, who shall, within ninety days from the date of these presents, make known to the said parties of the second part (*the trustees*) their names, and the amount of their respective claims."

The deed proceeds to provide that the trustees " shall forthwith take possession of, and sell all of said property at public or private sale, for cash, or on a credit of not longer than eight months, upon good personal security, or mortgage of real estate, or slaves; provided the said sale shall not be delayed longer than six months from the date of this deed; and they shall apply the proceeds thereof, 1st, to the payment of five per cent. commissions to the said parties of the second part; 2d. to the payment of the said sum due to L. L. Mandel; 3d. to the payment *pro rata* of all the other debts hereinbefore expressed and provided for, after the same shall have been presented by the several creditors, correctly stated, to the said assignees, or either of them."

Both or either of the trustees were empowered to make the sales, and convey to purchasers the title of John A. Nelson to the trust property.

The deed is dated 23d May, and was registered, properly acknowledged by Nelson, 4th June, 1855.

After the registration of the deed, at the June term of Pulaski Circuit Court, 1855, Clements & Hyde, and John D. Scott & Co., creditors of John A. Nelson, residing in Philadelphia, represented by C. P. Bertrand; and Martin & Smith, and Paul Tolane & Co., creditors of Nelson, residing in Philadelphia, and represented by Watkins & Gallagher, obtained judgment against Nelson; caused executions to be issued thereon, and levied on the merchandize, etc., embraced in the deed of trust as the property of Nelson; and Peay, the sheriff of Pulaski county, took the same out of the possession of the trustees, etc., etc.

Mandel and Ingram, the trustees, thereupon filed a bill, on behalf of themselves and all of the creditors of Nelson named in the deed of assignment, in the Pulaski Chancery Court, against the execution creditors, their attorneys, the sheriff, etc., praying that the executions be injoined, the property levied on restored to the possession of the complainants, and that they be protected by the Court in the execution of the trust for the benefit of the *cestui que trusts*, etc.

On the filing of the bill, the Chancellor granted an injunction, etc., as prayed.

Watkins & Gallagher answered the bill for themselves, and the execution creditors represented by them—Bertrand answered for himself, the creditors represented by him, the sheriff and his deputy. The answers are, in substance, the same.

The answers allege that the deed of trust embraced all the property owned by Nelson. That it was fraudulent and void upon its face as to his creditors, having been executed, as was apparent from the face of it, by its terms, conditions and provisions, as respondents believed, for the purpose of delaying, hindering and defrauding the creditors of Nelson. As further reasons for regarding the deed to be fraudulent, and causing the property to be levied upon, respondents state that the debts upon which the judgments above referred to were obtained, had been contracted long before the execution of the deed of trust. That Nelson, immediately before the execution of the

328         · CASES IN THE SUPREME COURT

Mandel et al. vs. Peay, et al.                    [MAY

deed, declared, that before his goods should be sold to pay his debts, he would give them away, or words to that effect.   That after the making of the deed, and before the executions were levied, the parties had sold as much of the goods, wares and merchandize embraced therein as they could, at a large sacrifice.   That they had fraudulently removed a considerable portion thereof beyond the limits of the county and the jurisdiction of the Court.   That the trustees had given no security that they would properly execute the trust.   That one of them, Ingram, as respondents were informed, was gambling off and wasting the trust funds—nor had the trustees, in any manner, attempted to inform the creditors of Nelson, mentioned in the deed of trust, and who reside beyond the limits of the State, of its execution, or offered to pay anything, or state any account, or declare any dividend, etc., etc., though they had received large sums from the sale of the goods, etc.

Upon the hearing, the depositions of Gordon N. Peay and Wm. Brown, jr., were read on the part of the defendants. Peay proves nothing material to the points to be determined by us.   Brown testified to declarations made by Nelson, shortly before the execution of the deed of trust, conducing to show an intention on his part to make an assignment for the purpose of preventing his creditors from sacrificing his property, etc.

The Chancellor, upon the bill and deed exhibited, the answers, replications and depositions above referred to, held the trust deed to be fraudulent, null and void as to all of the creditors of Nelson, dissolved the injunction and dismissed the bill, at the costs of the complainants; founding his opinion mainly upon the impression that the deposition of Brown proved an intention on the part of Nelson to make a fraudulent assignment.

But upon a motion for a rehearing, made by the complainants, the decree was reformed as follows: " The Court being sufficiently advised of the motion for reconsideration, etc., doth order, adjudge and decree, that the decree rendered in this case be reformed so far as to reinstate the injunction herein

except as to the claim of said L. L. Mandel, that said injunction be dissolved as to said claim, and stand as to the other creditors specified in the decree, the Court holding the deed as to said claim of L. L. Mandel to be fraudulent; and that said trust be executed in this Court, and said trustees be required to make full report of their proceedings under said deed on the first day of the next term of this Court"

The complainants appealed.

The effect of the decree of the Chancellor was to hold the assignment valid as to all of the beneficiaries named therein, except *Mandel*, to enjoin the sale of the trust property under the executions, and cause the trust to be executed in chancery for the benefit of the creditors of Nelson, secured by the deed, to the exclusion of *Mandel's* debt.

Upon what ground the Chancellor held the deed void as to the *debt* of *Mandel*, does not appear. Not upon the ground that he was a preferred creditor of Nelson, (if he stood in the attitude of a creditor,) because the Chancellor correctly held, in the opinion delivered by him, when the first decree was rendered, that a debtor in failing circumstances may make a preference among his creditors. *Hempstead vs. Johnson*, 18 *Ark.* 123.

Not upon the ground, we suppose, that it was proven that Nelson made declarations before the execution of the deed, indicating an intention on his part to make a fraudulent assignment, because it was not alleged in the answers, or proven upon the hearing, that Mandel had any knowledge of, or was a party to such fraudulent design on the part of Nelson. Nor is there any proof in the cause from which it can be legally inferred that Mandel (who resided at Pine Bluff) was cognizant of the declarations of Nelson. In this respect the answers and the proof place him upon the same footing with the other creditors named in the deed. There is no showing that any of them were privy to the fraudulent intent attributed to Nelson. See *Hempstead vs. Johnson, supra; Cornish vs. Dews*, 18 *Ark.* 172.

21·

Nor is there any allegation in the answers, nor was there any proof on the hearing, that Mandel's claim was *fictitious* or *simulated*. The validity of his claim not being put in issue by the answers, he was not called upon to produce any evidence of its genuineness other than the recitals in the deed of trust. The Chancellor having, very properly, no doubt, determined to retain the case, and cause the trust to be executed, under his directions, for the benefit of the other creditors of Nelson named in the deed, if he had grounds to suspect the validity of Mandel's claim, or if it had been questioned by any of the beneficiaries, he could have caused an enquiry to be made before the master, for the purpose of ascertaining whether it was a genuine demand or not, before ordering a distribution of the trust funds among the beneficiaries under the deed.

If the trustees were wasting the trust funds, as alleged in the answers it was within the power of the Chancellor to rule them to security, or remove them and appoint a receiver, etc.

We find nothing upon the face of the deed to render it fraudulent and void as to Mandel's claim. It appears from the recitals in the deed, and the allegations of the bill, that Nelson was, individually, largely indebted, and in failing circumstances. That Mandel was his partner in a stock of merchandize, etc., having an interest in the effects of the partnership to the extent of $6,063 52. That Nelson made the deed of assignment, conveying not only his separate property, but with the consent of Mandel, the entire effects of the partnership, to secure the payment of the individual creditors of Nelson, with a reservation or preference in favor of Mandel to the extent of his interest in the assets of the firm. There is no recital in the deed, or allegation in the bill, or answers, that the creditors named in the deed were creditors of the firm of John A. Nelson & Co., or that Mandel was jointly liable with Nelson for any of the debts. Consequently, the provision made in the deed for the payment of the claim of Mandel in preference to the other beneficiaries, cannot be treated as a reservation of a benefit in

the trust property, by Mandel, for the benefit of himself as against his *own creditors*.   The transaction, as it now appears before us, was simply that Mandel consented for Nelson to assign the effects of the partnership for the payment of his individual debts, after first paying to Mandel a sum, out of the proceeds of the sale of the effects, equal to the interest which Mandel had therein as a partner.

Suppose the deed of assignment had not been made, and the individual creditors of Nelson had all obtained judgments, and caused executions to be levied on the partnership goods, Mandel could have injoined the sale of his interest in the goods for the payment of Nelson's debts.

It follows that so much of the decree of the Chancellor as declared the deed of trust to be null and void as to the claim of Mandel, must be reversed, and the cause remanded for further proceedings.

Absent, Mr. Justice Rector.