## BARTLETT, REID & Co. *v.* TEAH and others.

*(Circuit Court, E. D. Arkansas.* ———, 1880.)

MORTGAGE—SPECIFIC LIEN—EQUITABLE TITLE OF GRANTOR.—A mortgage, or deed of trust in the nature of a mortgage, creates a specific lien, and is, in effect, a security for a debt, and not an absolute conveyance of the property. The equitable title remains in the grantor, and may be sold or encumbered by him, or seized and sold by his creditors, subject to the prior lien of the mortgage or deed of trust.

ASSIGNMENT FOR BENEFIT OF CREDITORS—ABSOLUTE TITLE PASSED.—A voluntary assignment of property by a debtor, for the benefit of his creditors, does not operate by way of security for the debts, nor create a lien on the property, but passes the absolute title, legal and equitable, to the assignee, for the purpose of raising a fund to pay debts; and, as against the assignee and those holding under him, the debtor has no estate or interest in the property, legal or equitable, which he can convey or encumber, or which his creditors can seize, or sell, or establish a lien upon, until the purposes of the trust are satisfied.

ASSIGNEE—ATTACHING CREDITORS—REV. ST. OF ARK. § 385.—Under section 385 of the Revised Statutes of Arkansas, an assignee does not acquire title to the property assigned, as against attaching creditors of the assignor, until he files the inventory and gives the bond required by that section; and, until the inventory is filed and the bond given, the assignee cannot lawfully take possession of the property.

DEED OF ASSIGNMENT IN CONTRAVENTION OF REV. ST. OF ARK. § 387.— A deed of assignment that directs the assignees to sell the property (a stock of goods) in the ordinary course of trade, at private sale, for 12 months, and that, in terms or by necessary implication, forbids a sale at public auction until after the expiration of that period, is in contravention of section 387 of the Revised Statutes, and renders the deed void.

The plaintiffs sued out a writ of attachment, and caused it to be levied upon a stock of goods as the property of the defendant Amanda Teah. Edward Hunt and Abram Teah intervened in the suit, and filed their petition, claiming the property attached under an instrument claimed by them to be a mortgage, or deed of trust in the nature of a mortgage. After reciting the names of the creditors, and the amount of their respective debts, it conveys the property, in apt words, absolutely to the assignees in trust, for the purpose of securing numerous creditors named in the full payment of their several debts, and for that purpose the assignees are empowered to take immediate possession of the property, and sell the same at private sale, in the usual course of trade, and with the proceeds pay the creditors mentioned; and, if the debts are not satisfied at the end of 12 months after the date of the assignment, the assignees are directed to sell the property remaining on hand at public auction, upon 10 days' notice. The assignees are to account to the assignor for any surplus remaining after satisfying in full the debts of the creditors named. There is no defeasance clause in the instrument. It was duly executed, acknowledged and recorded, and the assignees in possession of the goods under it before the levy of the writ of attachment. It affirmatively appears from the petition that the assignees have not filed an inventory, nor given bond as required by section 385, Gantt's Digest. The plaintiffs in the attachment demurred to the petition.

*Wm. Walker,* for assignees.

*Erb, Summerfield & Erb,* for attaching creditors.

CALDWELL, J. The first question to be determined is the character of this instrument.

The interpleader maintains that it is a mortgage, or deed of trust in the nature of a mortgage, and the attaching creditor insists that it is an assignment for the benefit of creditors, and that, as such, its validity must be tested by the provisions of the statute of this state relating to such instruments.

A brief consideration of the purposes and legal effect of the several instruments mentioned will disclose to which class this instrument belongs. A mortgage does not invest the mortgagee with an absolute and indefeasible title; the equitable title, called the equity of redemption, remains in the mortgagor. The mortgage is a security for the debt, and creates a *lien* upon the property in favor of the creditor. There is no difference in legal effect between a mortgage with a power of sale and a deed of trust, executed to secure a debt, where the power of sale is placed in a third person. Both are *securities* for a debt; both create *specific liens* on the property; and in both the equitable title or right of redemption remains in the debtor, and is an estate or interest in the property that the debtor may sell, or that may be seized and sold under judicial process by his other creditors, subject to the *lien* created by the mortgage or deed of trust. Burrill on Assignments, § 6; *Turner* v. *Watkins*, 31 Ark. 429, 437; Dillon's Monograph on Deeds of Trust, 11 Am. Law Register, (N. S. 1863,) 648.

An assignment for the benefit of creditors is well defined to be "a transfer by a debtor of some or all of his property to an assignee in trust, to apply the same, or the proceeds thereof, to the payment of some or all of his debts, and to return the surplus, if any, to the debtor." Burrill on Assignment, § 2. The terms of the instrument in this case bring it exactly within this definition, and stamp it as an assignment for the benefit of creditors and not a mortgage, or deed of trust in the nature of a mortgage. Unlike a mortgage or deed of trust, it was not given by way of *security*. There is no defeasance clause giving the grantor the right of redemption; it does not create a lien on the property, but conveys it

absolutely for the purpose of raising a fund to pay debts; and, if valid, it passed the absolute title, legal and equitable, to the grantors in the deed, subject to the trust, and placed the same beyond the reach of the debtor, as well as her creditors, until the purposes of the trust were satisfied. When the debts were paid the debtor had a right to the surplus, but until that was done she had no legal or equitable interest in the property, or its proceeds, that could be sold or encumbered or seized on attachment or execution by her creditors. *Briggs* v. *Davis*, 21 N. Y. 577; *Hoffman* v. *Mackall*, 5 Ohio St. 124; *Crittenden* v. *Johnson*, 11 Ark. 94; *Pettit* v. *Johnson*, 15 Ark. 55; *Turner* v. *Watkins*, 31 Ark. 437.

Is the instrument valid as an assignment for the benefit of creditors? For a long period in this state there was no statute limiting or regulating the common law rights of a debtor to convey his property to an assignee for the payment of his debts. It is well known that in many cases where debtors resorted to this mode of shielding their property from judicial process, they made choice of an insolvent friend or relation for assignee, who would administer the trust in the interest of the debtor; and not having to file any inventory and appraisment of the property assigned, or give bond for the faithful execution of the trust, the result was that the property was appropriated by the assignee for his own and the debtor's use, and it was rare that creditors received anything from the trust. Under that system it would have been more appropriate to designate the transaction as an assignment for the benefit of the debtor and his assignee, and to defraud creditors, than as an assignment for the benefit of creditors.

Of course, it was open to creditors to invoke the aid of a court of equity to remove such an assignee and appoint some suitable person to execute the trust, but it often happened that before creditors, who usually resided at a distance, could be sufficiently advised, and concert measures for their protection through the court of chancery, that the assignee had placed the property and its proceeds beyond their reach. And where that was not the case, and the creditors succeeded in getting rid of the debtor's assignee and having a receiver

appointed, the costs incurred in the litigation that had to be gone through with to attain that end usually consumed the estate.

To put an end to such fraudulent practices the act of 1859, sections 385, 387, Gantt's Digest, was passed. It was the design of that act to cut up by the roots the evils of the former practice. The legislative intent to accomplish this purpose is not left to implication, but is expressed in plain and unmistakable language. The first section of the act declares that "in all cases in which any person shall make an assignment of any property, whether real, personal, mixed, or choses in action, for the payment of debts, *before* the assignee thereof shall be entitled to take possession, sell, or in any way manage or control any property so assigned, he shall be required to file in the office of the county clerk a full and complete inventory and description of the property, and execute a bond to the state in double the value of the property, with good securities, to be approved by the county judge."

Under this section three things are necessary to a complete and valid assignment—*First*, a deed of assignment; *second*, an inventory of the property filed with the county clerk; and, *third*, the execution of an approved bond by the assignee. All these must be done "before" the assignee acquires the legal title to the property; they are conditions precedent, made so by the express language of the statute.

One who by law has no right to the possession of personal property, and no right to sell or in any way manage or control it, has no title to it. This language in the act, *ex vi termini*, imports a want of title, and is legally equivalent to a declaration that, before the title to the property shall vest in the assignee, he shall file the inventory and give the bond required by the act.

The assignee is not required to prepare the inventory, but to "file it in the clerk's office;" he does not make it and cannot do so, because he is denied the possession of the property until the inventory is filed. It is the duty of the debtor making the assignment to prepare the inventory; it is a material, and, under the statute of this state, an indispensable,

part of the assignment. There is not a word in the statute countenancing the suggestion that the assignee is required to make the inventory. This would be to reverse the necessary and uniform order of doing business; it is the vendor of goods who makes the invoice and not the vendee.

The assignee, in a voluntary deed of assignment to pay creditors, is not a purchaser for value; he has none of the equities of such a purchaser, and in a court of law he must stand on his naked legal title, which he can only acquire in the mode prescribed by the statute. And what can be more reasonable and just than the requirements that such an assignee shall, for the protection and security of the debtor's creditors, place upon record evidence of the character, quantity, and value of the property assigned, and give a sufficient bond to account therefor; and that he shall not be invested with the title to the property until these things are done? And if a debtor desires, by an assignment, to place his property beyond the reach of judicial process, at the suit of his creditors, is it not just and reasonable that he should be required, as a condition precedent to the effectiveness of such an assignment, to see to it that the assignee he himself has chosen files the inventory and gives the bond required by law for the protection of creditors? Such must be his duty under a statute like that in this state, which leaves the property in his possession until the inventory is filed and bond given, otherwise it would be to his interest to select an assignee who either could not or would not give a bond.

It is believed the statute of this state is more peremptory and stringent in its provisions on this subject than the statute of any other state. No other statute has been brought to our attention that in terms prohibits the assignee from taking possession of the property until he files the inventory and gives the bond. In most of the states he may lawfully take possession of the property, and time is given to file the inventory and give bond. This was the law in New York, and the court of appeals of that state held that, if the inventory and bond were not filed within the time required by the statute, the assignee, though in possession under the deed of assign-

ment, acquired only an inchoate title, that was void as against an attaching creditor of the assignor. The court say the schedule required by the act to be made by the debtor within 20 days from the date of assignment is a necessary part of a valid assignment, and a prerequisite to vesting the title to the property in the assignee; and that the execution by the assignee of the bond required by the act is also a prerequisite to the acquisition of an absolute title by the assignee, and that until the inventory is filed and bond executed the property may lawfully be seized on attachment at the suit of the debtor's creditors. And the court say further that "assignors must see, in selecting assignees, that they will not only accept, but that they can and will give the bond required, and assignors must take care to complete the assignment by giving the necessary schedule." *Juliand* v. *Rathbone*, 39 N. Y. 369. And see *Hadman* v. *Bowen*, Id. 196; *Britton* v. *Lorenz*, 45 N. Y. 51.

Confessedly, until the inventory is filed and bond given, the assignee is not entitled to the possession of the property, but the possession remains with the debtor. Now, if the deed of assignment, without more, passes the title and bars creditors from proceeding at law to subject the property to the payment of their debts, the property is placed in a novel predicament: the assignee cannot dispose of it in execution of the trust, nor can it be reached by proceedings against him, because neither the possession, nor rights of possession, nor disposition is in him; and creditors cannot reach it in the hands of the debtor, for though in his possession, the title is in his assignee, and he only holds it as a kind of bailee or trustee, until it shall please his assignee to file an inventory and give the required bond. This, in effect, is making the debtor his own trustee. Is this state of things to continue at the pleasure of the debtor and his assignee? If not, when and how is it to be terminated?

It is said creditors may resort to equity to enforce the trust. Without inquiring whether a bill would lie for that purpose, especially at the suit of a creditor excluded from all benefits under the assignment, it certainly is not their only

remedy. They have an undoubted right to pursue their legal remedies, unaffected by an assignment that is incomplete, or in violation of the statute.

Section 387 declares that the "assignee shall be required to sell all the property assigned to him for the payment of debts, at public auction, within 120 days after the execution of the bond required by this act, and shall give at least 30 days' notice of the time and place of such sale."

This deed of assignment, in terms or by necessary implication, requires the assignees to sell at private sale, in the usual course of trade, for 12 months, and after the expiration of that period they are authorized to sell at public auction, on 10 days' notice. This provision is in direct contravention of the statute, and renders the assignment void.

Demurrer sustained.

On a motion for rehearing, before a full bench, McCRARY, C. J., concurred in the foregoing opinion.

NOTE.—See *Wright* v. *Thomas, ante,* 716.