## VANCOUVER NAT. BANK v. LAW UNION & CROWN INS. CO.

(Circuit Court, D. Oregon. March 4, 1907.)

### No. 3,040.

1. INSURANCE—INSURABLE INTEREST—GENERAL CREDITOR OF OWNER OF PROPERTY.

    A general creditor has no insurable interest in the property of his debtor.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 142.]

2. SAME—RIGHT OF ACTION ON POLICY.

    An insured may, at least with the consent of the insurer, have the loss, if any, made payable to a third person, who by such designation becomes his agent or representative, and may sue on the policy in case of loss in his own name; and it is immaterial that he is a creditor of the insured and by agreement between them entitled to the insurance, but his right of recovery is subject to all conditions imposed upon the insured.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 1559.]

3. SAME—CONSTRUCTION OF POLICY—APPLICATION OF CONDITIONS TO MORTGAGEE.

    Under a provision of an insurance policy that "if, with the consent of the company, an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed

in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto," the preceding conditions in the policy apply to the interest of a mortgagee or other person having an interest in the policy in all events, but as modified by whatever may be written upon the slip attached to the policy.

**4. SAME—AVOIDANCE OF POLICY FOR BREACH OF CONDITION—TITLE OF INSURED.**

A policy of fire insurance containing a provision that it shall be void if the interest of the insured be other than unconditional and sole ownership is avoided by a contract by the insured for the sale of the property by which he transfers possession and agrees to convey the title, the effect of such contract being to vest the purchaser at once with the equitable title, and such rule applies whether the subject of insurance be realty or personalty.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 799.]

## At Law.

On April 25, 1905, the defendant issued to George W. Cone, under the firm name of George W. Cone Lumber Company, its policy of insurance, to which a slip is attached showing the amount of insurance and the property covered, as follows:

$500 00   On one story rubberroid roof, frame building, occupied by the assured as a wet log sawmill, situate on the east bank of the Willamette river, at St. Johns, Multnomah county, Oregon.
$500 00   On engines, boilers, etc.
$500 00   On other fixed and movable machinery.
$500 00   On lumber in piles and about the premises.
$500 00   On frame dock, situate on the above-described premises.

Upon the same slip is the memorandum: "Loss, if any, payable to Vancouver National Bank, Vancouver, Washington."

The policy contains this clause at the foot of it:

"This policy is made and accepted subject to the following stipulations and conditions, printed on the back hereof, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

And on the back thereof are printed these provisions, among others:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership * * * or if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise."

"If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee, or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto."

The property was destroyed by fire September 1, 1905. Prior to that time, to wit, on April 22, 1905, George W. Cone, under the firm name of George W. Cone Lumber Company, entered into a contract with the Oregon Fir Lumber Company, whereby, for the consideration of $50,000, he sold and agreed to convey the property, both real and personal, to the latter company. After the fire an adjustment was had of the loss, and there was apportioned to the defendant company, as its proportional liability, among other companies cov-

ering upon the same property, the sum of $2,156.84. For a recovery of that amount, this action has been instituted.

The defendant has set up, by way of defense to the recovery, that the George W. Cone Lumber Company, in violation of the stipulations of the policy, on August 22, 1905, sold the property to the Oregon Fir Lumber Company, which said company assumed possession all without the consent or agreement of defendant; that thereafter the unconditional and sole ownership was not in the George W. Cone Lumber Company, and that by reason of such sale a change took place in the interest, title, and possession of the subject of the insurance, whereby the policy was rendered void as against the defendant company, and it was relieved of responsibility. The reply alleges that the defendant company had, long prior to the fire, full knowledge of such transfer under the contract alluded to, and, further, that the Oregon Fir Lumber Company never entered into possession, or carried out the covenants resting upon it, and thus never acquired any right, title, interest, or ownership in or to the property.

W. E. Yates and Platt & Platt, for plaintiff.
Snow & McCamant, for defendant.

WOLVERTON, District Judge (after stating the facts). It is first contended that the plaintiff cannot recover, for the reason that it is without an insurable interest in the property covered by the policy of insurance. Under the testimony, and by the explicit admission of the parties, the plaintiff had not at the date of the policy, nor has it now, any other interest in the subject of the insurance except as a general creditor. It had not then, nor has it now, any mortgage or judgment, but holds the promissory notes of the George W. Cone Lumber Company for moneys loaned or advanced, so that it stands absolutely as a general creditor, and in no other position. Such a creditor is without an insurable interest. As expressed by the court in Foster v. Van Reed, 5 Hun (N. Y.) 321, 325:

"It certainly would not be claimed that a mere simple contract creditor could obtain a valid insurance of his debt from a fire insurance company. The creditor must have an interest in the real estate to authorize him to insure."

Under certain peculiar conditions simple contract creditors have been held to have an insurable interest, as where the debtor is insolvent, or has since deceased, and the estate constitutes a fund, as it were, for the discharge of his obligations, or the property has been purchased upon the credit or responsibility of the person claiming the interest. Herkimer v. Rice, 27 N. Y. 163; Rohrbach v. Germania Fire Ins. Co., 62 N. Y. 47, 20 Am. Rep. 451; Roos & Co. v. Merchants' Mutual Ins. Co. of New Orleans, 27 La. Ann. 409. But no such conditions attend the claim or demand of plaintiff.

The real question, however, is not whether the plaintiff has an insurable interest, but whether it is entitled to sue upon the demand for loss under the policy. It will be noted from the memorandum upon the slip that the loss, if any, was made payable to the bank unconditionally, not, as is usually the case, "as its interest may appear." This is, in effect, an appointment of the bank as the party to receive payment in case of loss. The parties to the policy have regularly so stipulated with reference to the loss, and the bank has assented thereto; and why may it not sue to enforce the obligation? The legal consequences of such a stipulation and agreement are well stated by

Mr. Justice Miller in the case of Bates v. Equitable Insurance Company, 10 Wall. (U. S.) 33, 19 L. Ed. 882. He says:

"Now, it is a well known and frequent thing in insurance business for a person to insure his life, or his property, and either in the policy itself, or by indorsement at the time it is made, or by subsequent indorsement, to which the consent of the company is generally required, to direct the loss to be paid to some third party. And this is done in language similar to, if not identical with, that used in this case. It is a mode of appointing that the loss of the party insured shall be paid by the company to such third person. This transaction is a very common mode of furnishing a species of security by a debtor to his creditor,. who may be willing to trust to the debtor's honesty, his skill and success in trade, but who requires indemnity against such accidents as loss by fire, or the perils of navigation. The property of the debtor at risk being thus insured for the benefit of the creditor gives him this indemnity."

So that the relation stands here simply that the Cone Lumber Company insured its property for the benefit of its creditor, namely, the Vancouver National Bank; and there exists no good or sufficient reason why this may not be done. Guiterman v. German-Amer. Ins. Co., 111 Mich. 626, 70 N. W. 135; Ermentrout v. American Fire Ins. Co., 60 Minn. 418, 62 N. W. 543. I am of the opinion, therefore, that the action was rightly brought in the name of the Vancouver National Bank, and that it could sue whether it had an insurable interest in the property of the insured or not. It is sufficient that the bank was appointed as the party to receive the loss, if any should occur. Such being the agreement of all the parties concerned, it occupies the relation of a trustee, and may recover in its own name.

The next contention is on the part of counsel for plaintiff, which is that, under the provisions of the paragraph running, "If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee," etc., it was not designed that a breach by the assured of any of the preceding conditions contained upon the back thereof should void the policy, because, it is argued, all the conditions, if any, affecting the bank were, by intendment, to be contained upon the slip attached thereto, whereby the loss is made payable to the bank. There are several cases in the state courts so holding, the first, and leading one, of which is Oakland Home Ins. Co. v. Bank of Commerce, 47 Neb. 717, 66 N. W. 646, 36 L. R. A. 673, 58 Am. St. Rep. 663. The case is determined entirely upon the interpretation of a paragraph identical with the above. The learned commissioner who announced the opinion of the court renders the stipulation as follows:

" 'The conditions hereinbefore contained shall apply,' not absolutely, but in a qualified way, 'in the manner expressed in such provisions and conditions * * * as shall be written upon, attached, or appended hereto'; that is, in order to render the general conditions of the policy applicable to the interest of a mortgagee, there must be written upon, attached, or appended to the policy, relating to the interest of the mortgagee, some provisions or conditions expressing in what manner the conditions of the policy shall be so applicable."

He then further reasons that no conditions were written upon or attached or appended to the policy, and hence that the general provisions should not apply. The clearest statement of the position is contained in a later case. Christenson v. Fidelity Ins. Co., 117 Iowa, 77, 90 N. W. 495, 94 Am. St. Rep. 286. The court, after quoting a part of the clause, says:

"This means that, in order that they become applicable to the interest of the mortgagee, the manner thereof must be indicated by an indorsement or some writing attached to the policy. Nothing of the kind was indorsed on or appended thereto, and for this reason the conditions do not apply."

Other cases to the same purpose are Senor & Muntz v. Fire Insurance Co., 181 Mo. 104, 79 S. W. 687; East v. New Orleans Insurance Association, 76 Miss. 697, 23 South. 358; Queen Ins. Co. v. Dearborn Sav., Loan & Building Ass'n, 175 Ill. 115, 51 N. E. 717; Northern Assurance Co. v. Chicago Mut. B. & L. Ass'n, 98 Ill. App. 152; Boyd v. Thuringia Ins. Co., 65 Pac. 785, 25 Wash. 447, 55 L. R. A. 165. Opposed to this view is a case in the United States Court of Appeals for the Eighth Circuit, before Caldwell, Sanborn, and Thayer, Circuit Judges. The opinion is by Mr. Justice Sanborn. After stating the contention of counsel for the defendant in error, which is the same as that made by counsel for plaintiff here, he says:

"But the clause which these parties selected and attached to the policy had a known, definite, and adjudicated meaning. It had a settled legal effect when they chose and appended it to the contract. The meaning and effect that the indemnity thereby secured to the mortgagees was subject to the risk of every act and neglect of the mortgagor which would avoid the original policy in his hands. No form of words could have been devised or adopted, relating to the insurance of these mortgagees, which would so clearly and conclusively have expressed the intention of the parties to this contract to subject the indemnity secured by the mortgagees to the risk of the acts and omissions of the mortgagor as the clause which they selected and attached to the policy, because a long line of adjudications, covering more than 40 years, had established the fact that this was its true meaning and effect."

After citing authorities, he continues:

"The true construction of the clause 'Loss, if any, payable to ———, mortgagee, as his interest may appear,' or of words of similar import, when attached to policies of fire insurance, is, and has been for more than 40 years, that the mortgagee is thereby made the simple appointee of the mortgagor, and that his indemnity is at the risk of the acts and omissions of the latter which would avoid, terminate, or affect the mortgagor's insurance under the original policy." Delaware Ins. Co. of Philadelphia v. Greer, 120 Fed. 916, 57 C. C. A. 188, 61 L. R. A. 137.

A later case by the same court, composed of Circuit Judges Sanborn, Van Devanter, and Hook, has this to say on the subject:

"But the question under consideration is not solved by merely ascertaining the meaning of the words 'as their interest may appear.' They do not stand alone, and are not controlling. By the plain terms of the indorsement the consent to pay the loss to Dodge and Stevenson was made 'subject to all the conditions' of the policy. This qualifying clause means that the consent was given upon the express condition that the conditions of the policy were not thereby abrogated or waived, but that they should have effect and be respected in like manner as if the indorsement had not been made. It means that a loss to be payable to Dodge and Stevenson under the indorsement, must be one which, under the conditions of the policy, would be payable to the insured, and that whatever, under those conditions, would defeat the insured's right to payment in the absence of the indorsement, will equally defeat it in the presence of the indorsement." Atlas Reduction Co. v. New Zealand Ins. Co., 138 Fed. 497, 504, 71 C. C. A. 21.

Franklin Ins. Co. v. Wolff, 54 N. E. 772, 23 Ind. App. 549, decided by the Court of Appeals of Indiana, is to the same purpose.

These latter authorities appear to me as announcing the better doctrine.   The paragraph in question reads:

"If   *   *   *   an interest   *   *   *   shall exist in favor of a mortgagee, *   *   *   the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto."

"Conditions hereinbefore contained" unquestionably refers to preceding conditions set out in the policy of insurance, or contained on the back thereof.   Now, it is stipulated that they shall apply where there is an interest in favor of a mortgagee, which has been assented to or recognized by the company.   If nothing further had been said, no question or confusion could arise.   But it is significant, as a premise, that the agreement is that they shall apply.   Now we inquire how, or in what manner, shall they apply, for in all events they are to have application, unless it be further stipulated, by reasonable intendment, that they shall not apply notwithstanding the agreement that they shall. They "shall apply in the manner expressed in such provisions and conditions   *   *   *   as shall be written upon, attached, or appended hereto"; that is, written upon, attached, or appended to the policy. Here is a plain recognition that they shall apply in some manner, and the manner pointed out is, as is expressed in the provisions and conditions, written upon, attached, etc.   The slip appended in the present case contains an additional paragraph, as follows: "Permission granted to make additions, alterations and repairs"—and a warranty by the insured that, when the sawmill is idle, competent watchmen shall be employed, and that, if it remains idle for a period of more than 30 days without the written consent of the company, the policy shall become void.   These are concluded by a stipulation that:

"This slip is attached to and made part of policy No. 1328999 issued to the George W. Cone Lumber Company by the Law, Union & Crown Insurance Company."

The permission to make additions, etc., is an enlargement, in a manner, of the assured's rights, and the warranty may be considered a restriction thereof.   These are provisions and conditions appended to the policy, but they do not appear to relate to the interest in favor of the bank any further than they modify the general provisions contained elsewhere in the policy;   so that there are no provisions or conditions expressing the manner of application of the conditions contained in the policy, or on the back thereof, preceding the clause under discussion. Does this mean that the preceding conditions shall not apply at all, or, in other words, was it necessary, to give them application, that they should have been repeated or set out again upon the slip, or an appropriate affirmative provision written thereon, saying in effect that such preceding conditions shall apply when it had been as plainly stipulated as could be that they should apply?   Any other answer but one, namely, that they were intended to apply in connection with such provisions and conditions as should be written upon the slip, and as modified thereby, would lead to a palpable absurdity, and hence it may be reasonably concluded that the conditions were intended to apply in all events, but as modified by whatever might be written upon the

slip attached to the policy. If the "hereinbefore" conditions were not intended to have application, how easy it would have been to have said so bluntly and pointedly—that such conditions shall not apply except so far as they are reiterated upon the slip. The so-called union policies, which have received a settled construction, do this. Syndicate Ins. Co. v. Bohn et al., 65 Fed. 165, 12 C. C. A. 531, 27 L. R. A. 614; Hastings et al. v. Westchester Fire Ins. Co., 73 N. Y. 141; Magoun v. Fireman's Fund Ins. Co., 86 Minn. 486, 91 N. W. 5. The policy not having expressed it in that way, it is incumbent upon the court to seek for another meaning. The slip is made part of the policy, and, being so made part, all the conditions on the policy, contained both upon the back and upon the face of it, together with those contained upon the slip, should be construed together as one entire instrument, and all given effect, if possible; and, when so construed, the plain intendment becomes manifest that it was not designed that there should be one agreement with the insured and another with the mortgagee, or other person having an interest in the property. I am aware of the rule that, if contracts of the kind manifested by policies of insurance contain ambiguous or incongruous conditions, the construction most favorable to the insured should be adopted. I am sure the paragraph in question is ambiguous enough, and why it should be retained and acted upon by men of clear business judgment is a mystery; but the rule does not go to the extent of according to the court a free hand to write into the contract a condition that was plainly never intended by the parties to be there, and such, it seems to me, would be the result of counsel's contention, were it adopted. As a further reason for the construction I have given the policy, it is stipulated at the foot thereof that "this policy is made and accepted subject to the following stipulations and conditions, printed on the back hereof, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto", so that the plain intendment from the whole contract is that all these conditions, including those contained upon the slip, should be construed together, and harmonized, if possible, and this I have endeavored to do. But, if I am wrong about this, and if the cases last cited are unsound upon principle, I am nevertheless firmly of the opinion that the cases in the state courts cited and relied upon by counsel for plaintiff are without application here, because in the present matter there is no interest existing in the creditor—that is, the Vancouver National Bank—with the consent of the insurance company. In other words, the insurance company has not agreed or stipulated that the bank has any interest, insurable or otherwise, in the property covered by the policy. Loss, if any, is made payable flatly to the bank, and not in so far as its interest may appear. So that in any event the conditions and provisions of insurance relating to such interest cannot apply here, because no such interest exists by agreement of the parties. The bank is simply the appointee of the insured, to receive whatever loss he may sustain by reason of fire from the insurance company, under the conditions of the policy by which insurance was guarantied.

The next question involved is whether the contract of sale entered into between George W. Cone Lumber Company and the Oregon Fir Lumber Company rendered the policy void, so that recovery cannot be

had in this action.   The contract was made and entered into between George W. Cone, of the first part, and the Oregon Fir Lumber Company, of the second part, and it stipulates that the first party "has and does hereby sell and deliver to said second party all the property hereinafter described upon the following conditions, to wit:   The second party is to pay said first party the sum of fifty thousand dollars ($50,000) for said property, twenty-five thousand dollars ($25,000) of which is to be paid for the real estate and twenty-five thousand dollars ($25,000) for all the other property.   Said second party is to pay said first party the sum of ten thousand dollars ($10,000) upon the signing and delivery of this contract and the possession of said property, the receipt of which is hereby acknowledged by said first party.   The balance is to be paid as hereinafter set forth.   Said first party is to transfer and convey said real estate by a good and sufficient warranty deed and all the other property by a good and sufficient bill of sale."

'Then, after describing the property in detail, the contract proceeds:

"The first party is to furnish said second party a complete abstract of title to said property showing a perfect title in said first party, which title is to be passed upon and approved by the attorney of said second party.   He is also to perfect and complete his title to said property and clear up all taxes and incumbrances against the same except a certain mortgage to E. Quackenbush, on which there is a balance of some fifty-eight hundred dollars ($5,800), and a mortgage held by Georgiana Jackson for one thousand dollars ($1,000).   Said first party is to have not to exceed sixty days to complete said abstract and perfect said title and prepare and furnish said warranty deed and bill .of sale.   When said first party perfects his title and makes and delivers a good and sufficient warranty deed of said real estate and a bill of sale conveying and transferring all of said property to said second party free from all incumbrances except the two mortgages above described, then said second party is to immediately pay said first party the balance of said purchase price of forty thousand dollars ($40,000), after deducting the amount of the mortgages above described therefrom.   The said second party is to have full possession and control of said property from this date and is to conduct and carry on said business."

It is contended on the one part that, by virtue of this contract or agreement, a change was effected in the interest and title of the subject of the insurance, and that thereafter the unconditional and sole ownership was not in the George W. Cone Lumber Company, and thus that there was a violation of the stipulations of the policy, rendering it void.   This position is challenged as unsound upon the other part.   It is a settled rule of law that, under a contract which portends a present sale of realty, an equitable conversion takes place, and that the property will henceforth be treated in legal consequence as if the legal title had actually passed; the most important incident attending such a contract, which may be mentioned, being that the property will descend to the heirs of the vendee, while the purchase money will go to the personal representatives of the vendor.   This proceeds under the maxim that "equity regards that as done which ought to have been done."   As is said by Mr. Pomeroy in his work on Equity Jurisprudence (section 368):

"The vendee is looked upon and treated as the owner of the land.   An equitable estate has vested in him commensurate with that provided for by the contract, whether in fee, for life, or for years.   Although the vendor remains owner of the legal estate, he holds it as a trustee for the vendee to whom all

the beneficial interest has passed, having a lien on the land even if in possession of the vendee, as security for any unpaid portion of the purchase money."

So it is said in Richter v. Selin, 8 Serg. & R. (Pa.) 425, 440:

"When a contract is made for the sale of land, equity considers the vendee as the purchaser of the estate sold and the purchaser as a trustee for the vendor for the purchase money. So much is the vendee considered, in contemplation of equity, as actually seised of the estate, that he must bear any loss which may happen to the estate between the agreement and the conveyance; and he will be entitled to any benefit which may accrue to it in the interval, because by the contract he is the owner of the premises to every intent and purpose in equity."

So, also, it is said, in McKechnie v. Sterling, 48 Barb. (N. Y.) 330, 334, where a contract very similar to the one involved here was under discussion:

"The agreement between the parties was therefore a contract for the sale of an interest in land. The defendant was authorized to take immediate possession. The payment of the consideration was to be made upon demand, as no time was fixed for its payment. Strictly, perhaps, the plaintiffs could not have required payment till they tendered an assignment of the lease, and gave the defendant possession. The contract, however, was absolute, and vested in the defendant the equitable interest in the land the moment it was executed and delivered."

And, quoting from Sugden on Vendors, p. 254, the opinion continues:

"That a vendee, being the equitable owner of the estate from the time of the contract of sale, must pay the consideration for it, although the estate itself be destroyed between the agreement and the conveyance; and, on the other hand, he will be entitled to any benefit which may accrue to the estate in the interim."

This much as to the general equitable doctrine.

Coming to the very point in controversy, we quote from Snyder v. Murdock, 51 Mo. 175, 177, as follows:

"After an executory contract for the conveyance of real estate has been entered into by the execution of a bond for title and notes for the purchase money, the property is at the risk of the purchaser. If it burns up, it is his loss. If it increases in value, it is his gain. This is the settled equity doctrine, and is based upon the principle that in equity what is agreed to be done must be considered as done."

So in Dunn v. Yakish, 61 Pac. 926, 10 Okl. 388, a case almost identical in its facts with the one at bar, the court says:

"Does the fact of the insertion into a contract like the present, for the sale of real estate, of an agreement to deliver possession at a future day, make any difference in the application of the rule? It is true it does not appear in the cases cited there were in the contracts any stipulations as to delivery of possession at a future day, nor is this circumstance alluded to; but they explicitly say it is the passing of the title in equity which throws the risk of loss upon the vendee, and entitles him to accruing benefits."

These authorities indicate very conclusively that, when the sale takes place under an agreement of the kind considered, the equitable title passes at once from the vendor to the vendee, which is such a transfer of interest or title as will void the policy under the paragraph relied upon. Indeed, it is explicitly so held in Gibb v. Philadelphia Fire Ins. Co., 59 Minn. 267, 61 N. W. 137, 50 Am. St. Rep. 405.

The question may be considered from another standpoint. It is held in Loventhal v. Home Insurance Co., 112 Ala. 108, 20 South. 419, 33 L. R. A. 258, 57 Am. St. Rep. 17, that:

"A vendee of land in actual possession, exercising acts of ownership under a valid executory contract of purchase, and holding the bond of the vendor to make title upon full payment of the purchase money, a portion of which remains unpaid, is the unconditional and sole owner in fee simple of said land, within the meaning of a policy of insurance which is conditioned that the 'entire policy shall be void if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple,' and as to an insured holding such interest a policy with this condition is not void, but can be enforced at the suit of the insured."

To the same purpose is the holding of the court in Baker v. State Ins. Co., 31 Or. 41, 45, 48 Pac. 699, 65 Am. St. Rep. 807. See, also, Pennsylvania Fire Ins. Co. v. Hughes, 108 Fed. 497, 47 C. C. A. 459.

Now, if it be true that such contract will constitute the vendee the unconditional and sole owner, it must follow unalterably as a corollary that such ownership cannot remain in the vendor, and that the contract itself operates to cause a change to take place in interest, title, and, if possession is delivered, in possession also. There is a line of authorities which, on cursory examination, seem to controvert the position that the loss in case of such a contract as is here entered into, occurring by reason of the destruction of buildings by fire prior to the time when it is contemplated that the deed shall be delivered, shall fall upon the vendee. The leading case on that view of the question is Wells v. Calnan, 107 Mass. 514, 9 Am. Rep. 65, wherein the court says:

"When property, real or personal, is destroyed by fire, the loss falls upon the party who is the owner at the time; and if the owner of a house and land agrees to sell and convey it upon the payment of a certain price which the purchaser agrees to pay, and before full payment the house is destroyed by accidental fire, so that the vendor cannot perform the agreement on his part, he cannot recover or retain any part of the purchase money."

The principle seems to have been adopted in Powell v. Dayton, Sheridan & Grande Ronde R. R. Co., 12 Or. 488, 8 Pac. 544. The true doctrine of that case, and of others upon which it proceeds, is elucidated in the case of The Tornado, 108 U. S. 342, 2 Sup. Ct. 746, 27 L. Ed. 747. The court there, in quoting from Taylor v. Caldwell, 3 Best & Smith, 826, says:

"'In contracts in which the performance depends on the continued existence of a given person or thing, a condition is implied that the impossibility of performance arising from the perishing of the person or thing shall excuse the performance.'"

And, further, in commenting upon the case of Appleby v. Myers, L. R. 2 C. P. 651, the court continues:

"There the plaintiffs contracted to erect certain machinery on the defendant's premises at specific prices for particular portions, and to keep it in repair for two years, the price to be paid upon completion of the whole. After some portions of the work had been finished, and others were in the course of completion, the premises, with all the machinery and materials thereon, were destroyed by an accidental fire. It was held that both parties were excused from the further performance of the contract, and that the

153 F.—29

plaintiffs were not entitled to sue in respect of those portions of the work which had been completed, whether the materials used had become the property of the defendant or not."

Then is cited the Wells v. Calnan, 107 Mass. 514, 9 Am. Rep. 65, as authority to that purpose.

So it would appear that, where the parties had in view the continued existence of buildings attached to realty until a conveyance of the legal title is had, then the rule in Wells v. Calnan, 107 Mass. 514, 9 Am. Rep. 65, is applicable. This is elucidated by a further reference to that case, and to a later one from the same court, namely, Allyn v. Allyn, 154 Mass. 570, 28 N. E. 779. In the former the court, by way of distinguishing some authorities referred to, further remarks:

"But in the case at bar the defendant has only agreed to pay the purchase money upon tender of a deed of the whole estate contracted for, including the buildings as well as the land."

And in the latter case, after referring to the contract, the court says:

"In such a state of things no condition can be implied that the performance of the contract is dependent upon the continued existence of the buildings. The reasoning of the cases in which it has been held that both parties were excused from performance by the destruction before a breach of that which constituted an important part of the contract, but concerning whose destruction there was no provision in the contract, does not apply."

However, on the other hand, where the parties are dealing with the property in general, and their contract is for the sale thereof, which is then in existence and capable of delivery or conveyance, the contract works eo instante an equitable conversion, and the parties must be considered as having changed position in reference thereto, and the loss falls accordingly, if there should be any occurring before conveyance.

In discussing the clause of the policy under consideration. the court, in the case of Skinner & Sons' Co. v. Houghton, 92 Md. 68, 93, 48 Atl. 85, 90, 84 Am. St. Rep. 485, says:

"Can it be doubted that there was a change in the interest in this property? As long as the insured has made no change in his estate in the property, a company may be perfectly satisfied to continue the insurance, but, if he makes such a change as to divest himself of all interest in the property, excepting a vendor's lien for the purchase money, and has a responsible party bound for the payment of that, he does not have the same motive for the protection of the property that he had before. In short, the insurer's risk is or may be increased by the change of the interest of the insured."

And so the court concludes that under a policy containing a clause identical with the one here under consideration, having in view a contract of the same nature, it wrought a change of interest in the insured as to the property that would render the policy void.

I have considered the rule thus far as it relates to the realty only, for the sake of perspicuity, and it is only necessary now to add that the same rule will apply, with equal, if not stronger, force, to the personalty. 2 Kent's Commentaries, 492; Commercial Bank v. Davidson, 18 Or. 57, 22 Pac. 517; Morrow v. Delaney, 41 Wis. 149.

Now, it will be seen that the contract is complete for the sale and

transfer of the property in question. It contemplates, of course, a future conveyance by deed and by bill of sale; but the covenants and agreements are mutual, and the contract itself stands upon such covenants and agreements, without any attempt or design, apparently, to make them conditions precedent; that is to say, the George W. Cone Company agrees to furnish the abstract as indicated on or before 60 days, and, when completed, it further agrees to make and execute the deed and bill of sale and to deliver the same, and the Oregon Fir Lumber Company agrees to pay the balance of the purchase price. The conveyance is not made to hinge at all upon the performance of any conditions precedent, but the covenants are mutual and concurrent, and the intendment is that the parties shall perform their covenants as agreed. Thus it is apparent that the intendment was that the contract should operate as a present sale, although executory, and that, in legal effect, when signed and delivered, it carried the equitable title, and henceforth there was an equitable conversion of the property. Under the testimony it is not altogether apparent that the Oregon Fir Lumber Company went into possession, but it did what was equivalent thereto. It authorized George W. Cone to run the business in the interests of the Oregon Fir Lumber Company, and, according to the testimony of Cone himself, the profits thereafter were to accrue to the Oregon Fir Lumber Company, and not to Cone. Mr. Blagen, who was as much concerned in the Oregon Fir Lumber Company as any one, says:

"In other words, he [Cone] was running it for the account of the Oregon Fir Lumber Company until such time as the deal was consummated."

So that there can be no question, under the contract and under the evidence, that the sale was absolute and not conditional, that it took effect at once to transfer the equitable title, and that the loss by the fire fell upon the Oregon Fir Lumber Company, and not upon George W. Cone, and, as the contract had the effect to violate the condition of the policy, it relieved the insurance company of all liability thereunder.

There is some discussion as to whether Dooly, the agent of the company, and through him the company, should be charged with knowledge of the transfer, and with a ratification thereof. But it is hardly possible that this can follow from the facts shown. Mr. Dooly testifies that he was discharged as agent of the company on August, 22, 1905, while in San Francisco, and, while he said on his examination in chief that he must have seen the account of the sale in the Oregonian prior to his discharge, yet, as it appears the sale took place on August 22, 1905, it is very evident that, being in San Francisco, he did not come into knowledge of the fact of sale until after his discharge, and hence it would seem that the company could not be affected by his knowledge thereof. At any rate, the proof does not show the fact as alleged.

These considerations lead to findings for the defendant in the action, and the complaint will therefore be dismissed.